

**SO ORDERED.**

**SIGNED this 23 day of August, 2013.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

TERRA HOOPER SMITH,           CASE NO. 12–07447–8–SWH
                              CHAPTER 13
    DEBTOR.

ORDER OVERRULING OBJECTION TO CONFIRMATION
AND ALLOWING MOTION FOR CONFIRMATION

This matter came before the court on the objection of Wells Fargo Bank, N.A. ("Wells Fargo"), as amended, to John F. Logan's ("trustee") motion for confirmation of Terra Hooper Smith's ("debtor") chapter 13 plan. A hearing on the matter was held on July 17, 2013, in Raleigh, North Carolina. At the conclusion of the hearing, the court took the matter under advisement and afforded the parties fifteen days to file supplemental material and memoranda of law outlining their respective positions.[1]

The debtor and her husband, Michael Smith, executed a balloon promissory note in favor of The Money Centere, Inc. ("Money Centere") on January 15, 1997, in the original principal amount

---

[1] Following the hearing and in accordance with the deadline proscribed by the court, Wells Fargo submitted a supplemental memorandum in support of its objection to confirmation on July 31, 2013.

of $51,200 ("promissory note"). The promissory note was secured by the debtor's principal residence located at 8010 Cornwall Road, Oxford, North Carolina ("real property"), pursuant to a deed of trust registered with the Granville County Register of Deeds on January 23, 1997.[2] The promissory note and deed of trust called for equal monthly installment payments of principal and interest, accruing at 12.39% per annum, in the amount of $542.07, beginning February 22, 1997, and continuing thereafter until January 22, 2012. Any amounts owed under the promissory note on January 22, 2012, became immediately due and payable. The promissory note also contained the following disclosure:

> THIS LOAN [IS] PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

(emphasis omitted).

The debtor filed a voluntary petition seeking relief under chapter 13 of the Bankruptcy Code on October 17, 2012. On February 20, 2013, Wells Fargo filed a proof of claim, Claim No. 2, in the amount of $50.582.62, all of which was secured by the real property ("proof of claim"). Because the debtor was in default as of the petition date, the proof of claim included prepetition fees,

---

[2] The promissory note, deed of trust and all Money Centere's rights thereunder were subsequently assigned to Wells Fargo.

2

expenses, charges, and arrearages totaling $7,806. The fair market value of the real property as of the petition date, according to Schedule A, is $80,000.

The debtor's chapter 13 plan, as modified by the trustee in his motion for confirmation, provides for monthly payments of $1,350.00 for fifty–two months, resulting in aggregate plan payments of $70,200.00. It proposes to treat the claim of Wells Fargo in the amount of $50,582.62 as fully secured, paying it in full over the fifty–two month plan term plus interest accruing at a rate of 5.25% per annum.

Wells Fargo filed an objection to confirmation, which was subsequently amended on April 22, 2013, requesting that the court modify the proposed treatment to provide for the payment of its claim at the contractual interest rate, 12.39%, and provide for the payment of postpetition ad valorem taxes and homeowners' insurance for the real property by the debtor. In support of its objection and relying exclusively on Witt v. United Companies Lending Corp. (In re Witt), 113 F.3d 508 (4th Cir. 1997), Wells Fargo argues that the proposed treatment of its claim—reducing the interest rate from the contractual rate of 12.39% to 5.25%—violates § 1322(b)(2).

Section 1322(b)(2), commonly referred to as the "anti–modification" provision, provides that a "plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . ." 11 U.S.C. § 1322(b)(2). This provision prohibits, with respect to claims secured solely by a debtor's principal residence, "any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note." Litton v. Wachovia Bank (In re Litton), 330 F.3d 636, 643–44 (4th Cir. 2003). Section 1322(c)(2),

3

on the other hand, provides an exception to the anti–modification provision by allowing "for the payment of a claim as modified pursuant to section 1325(a)(5)" provided that "the last payment on the original payment schedule for a claim secured only a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due . . . ." 11 U.S.C. 1322(c)(2); see 8 Collier on Bankruptcy ¶¶ 1322.01, 1322.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (recognizing that § 1322(c)(2) "clarifies the debtor's rights with respect to claims secured by the debtor's principal residence and overrides, to some extent, limitations on plan provisions that modify the rights of holders of such claims.").

The basis of Wells Fargo's objection was considered and rejected in In re Hubbell, No. 12–04310–8–SWH (Bankr. E.D.N.C. Aug. 23, 2013). In Hubbell, this court held that if "§ 1325(a)(5) is satisfied, courts have consistently permitted claims subject to modification under §1322(c)(2) to be restructured at an interest rate more favorable to the debtor than the rate on the original note." Id. at 8 (citations omitted). In reaching this conclusion, the court found that "vary[ing] the contractual rate of interest, in favor of a 'discount rate' is a permissible modification of a secured claim under § 1322(c)(2) and § 1325(a)(5)." Id. (citation and internal quotation marks omitted). Accordingly and based on this court's reasoning in Hubbell, the modification to the interest rate on Wells Fargo's claim in the instant case is permitted under § 1322(c)(2) and does not run afoul of § 1322(b)(2) and Witt. See Hubbell, No. 12–04310–8–SWH, at 8–9; accord In re Crickmore, No. 07–01350–5–ATS, at 2 (Bankr. E.D.N.C. Dec. 6, 2007) ("While § 1322(b) of the Bankruptcy Code prohibits bifurcation[,] . . . other modifications of the claim (such as extension of payment terms) are permissible . . . under § 1322(c)(2)."). Modification of the interest rate is permitted under these circumstances because the promissory note, pursuant to its terms, matured

4

prepetition and became immediately due and payable. See, e.g., In re Young, 199 B.R. 643, 647 (Bankr. E.D. Tenn. 1996) (recognizing that short–term home mortgages, balloon payments and traditional long–term mortgages with less than five years remaining under its terms are subject to modification under § 1322(c)(2)); 8 Collier on Bankruptcy ¶ 1322.17.

Section 1325(a)(5)(B)(ii) requires, in the absence of their acceptance of the plan or the debtor's surrender of the collateral serving as security, that each allowed secured claim be paid in full, either at the time of confirmation or in installments that "ha[ve] a total 'value, as of the effective date of the plan,' that equals or exceeds the value of the creditor's allowed secured claim . . . ." Till v. SCS Credit Corp., 541 U.S. 465, 473–74 (2004) (plurality opinion). According to Till, the proper calculation of the interest rate on allowed secured claims under § 1325(a)(5)(B)(ii) is the formula approach, which was summarized as follows:

> Taking its cue from ordinary lending practices, the [formula] approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan.

Id. at 478–79 ("[T]he resulting 'prime–plus' rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor."). Although, the court declined to set the scale for risk adjustment, it did observe that "other courts have generally approved risk adjustments of 1% to 3%," requiring "court[s] to select a rate high enough to compensate the

5

creditor for its risk but not so high as to doom the plan." Id. at 480–81.  For example, "[i]f the court determines that the likelihood of default is so high as to necessitate an 'eye popping' interest rate, the plan probably should not be confirmed." Id. (internal citations omitted).

The current prime rate is 3.25% and, therefore, the proposed interest rate on Wells Fargo's claim, 5.25%, incorporates a two percentage point risk adjustment.  Wells Fargo did not present any evidence indicating the basis by which the risk adjustment figure should be further increased, insisting only that the anti–modification provision in § 1322(b)(2), as interpreted by the Fourth Circuit in Witt, precludes any modification of its claim, including the interest rate.  Given that Till places the burden of proof on secured claimants to increase the risk adjustment figure and Wells Fargo offered no evidence to that effect during the hearing, the court will accept the proposed interest rate of 5.25% per annum.

Based on the foregoing, Wells Fargo's amended objection to confirmation is **OVERRULED** and the trustee's motion for confirmation is **ALLOWED.**

    **SO ORDERED.**

**END OF DOCUMENT**